# BRIDE *v.* REEVES.

EQUITY; SPECIFIC PERFORMANCE; LACHES; DAMAGES; APPEAL AND ERROR.

1. Jurisdiction of equity is not compulsory, but is the subject of discretion, and goes not as a matter of course, but is granted or withheld accordingly as equity and justice seem to demand in view of all the circumstances of the case, but this discretion is not an arbitrary or capricious one, but is controlled by the settled principles of equity. (Citing *Knott* v. *Giles,* 27 App. D. C. 581.)

2. Specific performance of the defendant's contract to convey land as soon as he had quieted title, the consideration for which was inadequate by reason of the expenses of so doing, which the defendant did not understand, will not be decreed where, although the contract was recorded shortly after its execution, its attempted enforcement was delayed for three years after title was perfected, during which time the land greatly increased in value. (Distinguishing *Bride* v. *Reeves,* 36 App. D. C. 476.)

3. While ordinarily an unsuccessful plaintiff in a suit for specific performance will be left to his remedy at law for the recovery of damages for the breach of the contract, nevertheless where, without objection by the plaintiff and presumably by consent of the defendant, the decree denying specific performance requires payment by the defendant to the plaintiff of moneys due by the former, it will be affirmed.

No. 2510. Submitted May 8, 1913. Decided May 26, 1913.

HEARING on an appeal by the plaintiff from a decree of the Supreme Court of the District of Columbia dismissing his bill for specific performance of a contract to convey land.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

This is a suit for specific performance of a contract to convey land, and the plaintiff, Cotter T. Bride, appeals from a decree dismissing his bill upon the payment by the defendant

James C. Reeves of the sum of $298.02, with interest from December 2, 1912.

The bill was filed March 10th, 1910, to enforce the following contract:

This agreement made and entered into this the 14th day of April, 1905, by and between James C. Reeves, of the District of Columbia, party of the first part, and Cotter T. Bride, party of the second part: Mr. Reeves agrees as soon as he acquires a good title to Square Six Hundred and Four (604) and Six Hundred and Five (605) to turn over to Cotter T. Bride his right title and interest in Square Six Hundred Four (604) and Square Six Hundred Five (605), upon the payment of Three Thousand Dollars ($3,000), the same to be a good title and free of encumbrances. Received on the above sixty dollars ($60).

James C. Reeves.   (Seal.)

Cotter  T.  Bride.

This contract was recorded April 30, 1907. The defendants other than Reeves are made parties as holding under certain trust deeds and conveyances made by Reeves after the record of the contract, copies of which are attached as exhibits to the bill.

The defendant Reeves's demurrer to the bill was sustained; but on appeal that decree was reversed and the cause remanded for further proceedings. *Bride* v. *Reeves,* 36 App. D. C. 476.

Upon the return of the mandate the defendants answered the bill. The answer of Reeves, the only one material to the cause, admits the execution of the contract except as to the seal attached to his signature, which, he charges has been attached since said signing and without his knowledge or consent. That he had entered into a contract with one Slater to quiet the title to the lands, and at the instance of said Slater, who was acting as agent for plaintiff, he executed the said agreement, receiving in all thereon the sum of $100. That

he was not in a mental condition to understand the nature of the instrument, and did not correctly understand its contents. That the contents were misstated to him by Slater and Bride, and he was too much under the influence of intoxicating liquor to understand the unconscionable contract that he was entering into. That the land was then worth $6,000, and is now worth from $8,000 to $10,000, and the contract was for $3,000, out of which would be deducted the $1,200 to be paid Slater for perfecting the title, and certain tax claims amounting to about $600.

That defendant repudiated the contract in May or June, 1907, when requested to make the conveyance of title, and plaintiff failed to take any action thereon until the land advanced at least one third in value. That during the interval defendant made the conveyances to others that are alleged in the bill. Testimony was taken, and on December 10, a decree was entered ordering defendant to pay to plaintiff the sum of $292.02, with interest from December 2, 1912, and upon said payment dismissing the bill.

*Mr. Mason N. Richardson* and *Mr. William W. Bride* for the appellant.

*Mr. W. Walton Edwards* and *Mr. John Ridout* for the appellees.

Mr. Chief Justice Shepard delivered the opinion of the Court:

In the former appeal, in reversing the decision in favor of Reeves, it was said: "A more serious question arises in respect of plaintiff's laches. Defendant's obligation to convey was not enforceable until a reasonable time after April 25, 1907, when the title was perfected. Plaintiff recorded the contract within five days thereafter, but did not bring his suit for nearly three years. One who appeals to the discretion of a court of equity to decree specific performance must do so

with reasonable promptitude. What is reasonable depends upon the circumstances of the case. Mere lapse of time that has occasioned no change of conditions which render it inequitable and unconscientious to entertain the demand, and is not excessive, is looked upon with some indulgence in equity, *George* v. *Ford,* 36 App. D. C. 315; *Smoot* v. *Rea,* 19 Md. 398–406. The excuse for this delay, namely the vacillation of Reeves, and his conduct leading plaintiff, until November 9, 1909, to entertain the reasonable expectation that he would make the conveyance without litigation, must be taken to be true as alleged. While not set out with perfectly satisfactory specification, we think they are to be regarded as sufficient. There is nothing in the bill from which it can be inferred that there was any great and unexpected rise in the value of the property during the period of delay." This was an expression of opinion founded on the only fact then before the court on the demurrer. A different case is presented on the testimony taken after the return of the cause to the trial court.

The facts as we find them are these: Reeves's only real estate consisted of the two squares described in the contract, of which he had been in continuous, uninterrupted, adverse possession for more than twenty years. He had a wife and children, and pursued the occupation of a market gardener upon the premises. He could read and write, but had little information and little or no knowledge or experience in matters relating to land contracts. Moreover, he drank intoxicating liquors to excess; had frequent "sprees" lasting sometimes for many days; and was improvident and needy. It does not appear that he was intoxicated at the time of the execution of the contract, though he appears to have returned home in the evening intoxicated, after spending part of the small sum paid him at the time. It does not appear that the contract was misread to him, or that its contents were misrepresented; he had the opportunity to, and apparently did, read it. The evidence regarding the scroll seal which appears opposite Reeves's signature alone, on the writing delivered to Bride, is not clear. None such was affixed to Bride's signature, nor was it affixed

to Reeves's on the duplicate delivered to him. The notary who drew the instrument and took the acknowledgment occupied an office opening into that of Slater, who brought the parties together. Reeves was not before that acquainted with Bride, but was with Slater, who had a contract with him to remove the cloud upon his title; that is to say, to bring an action under the provision of the Code to establish, of record, the title acquired by adverse possession. Reeves and his wife admit that the written word "seal" looks like his handwriting, but he positively denies writing it, or authorizing it to be written. The trial justice was unable to say that there was anything more than doubt whether Reeves had written the seal, or authorized it. We must confess a like doubt. There was, however, no reason why a seal should have been affixed to Reeves's signature alone, and no one appears to have demanded or suggested it. The only difference between a sealed and unsealed instrument of the kind was in respect of the bar of the statute of limitations. There was no binding contract on the part of Bride to complete the purchase, though he paid Reeves the sum of $60 upon its execution.

It seems reasonably clear that, although no misrepresentation was made to Reeves, he did not fully understand the effect of the deductions, worked by the terms of the contract, from the purchase price on account of encumbrances, and the condition of his quieting the title; and that he believed he was receiving more than he was entitled to under the legal construction of the contract. He had no legal adviser, and relied upon the notary employed by Bride. There is nothing to show, however, that this misunderstanding was the result of any deception practised by Bride. The two squares contained 117,960 square feet of land, and were assessed for taxation in 1905 at the value of 3 cents per square foot, with the exception of a part of one square—how much does not appear—which was assessed at 4 cents per square foot. This amounted to more than the purchase price agreed upon, and it is reasonable to suppose that the land was worth more than the assessed valuation; but how much more is not rendered certain by the testimony. That

this value had increased considerably between 1907 and the time of filing the suit is quite certainly proved. During that time lands like these situated near the Arsenal, preparations for extending the grounds of which were then contemplated, had considerably increased in value. The allegations of excuses for delay in bringing the suit, that were held to be sufficient on the demurrer notwithstanding lack of specification, are not sustained by the evidence taken in their support. Reeves expressly repudiated the contract in May or June, 1907, and such vacillation as was exhibited thereafter was that of plaintiff more than of Reeves. Bride attempted to interest one Manogue in the purchase, and they attempted to procure a deed from Reeves, joined by his wife, to obtain her release of dower, by offering first $500, afterwards $1,000. The deed was to be made to Bride and Manogue; Manogue was to pay one half of the original purchase price, and to pay the entire additional sum offered, which would make his own one half of the land cost him $2,500. Reeves and wife refused to make a deed for less than $5,000. The matter ended, and afterwards Reeves, through counsel, offered to repay Bride the money he had advanced, and the sum of $93.20 on account of tax certificates held by the latter. A claim of $406 had been made by Bride's representative,—unitemized,—and, though this was disputed, no itemized statement was furnished. Reeves admitted the receipt of $140 from Bride, and also offered to pay the $93.20 for the tax certificates, making a total of $233.20. The bill was not filed until March 10, 1910.

This is not a bill to set aside the contract for fraud or mistake. If it were, as before suggested, the proof would not justify a decree to that effect under the settled practice of equity. Instead of a bill to rescind, the defendant defends against a bill for specific performance. The question is not whether a court of equity will annul the contract, but whether it will extend its extraordinary remedy of specific performance, or leave the plaintiff to his ordinary remedy at law? The difference between the degree of hardship and unfairness that will induce a court of equity to vacate a contract, and that which will in-

duce it to withhold its aid, is well settled. *Cathcart* v. *Robinson,* 5 Pet. 264–276, 8 L. ed. 120–124; *Knott* v. *Giles,* 27 App. D. C. 581–593. As said in *Knott* v. *Giles:* "It is the well-settled doctrine that the jurisdiction of equity is not compulsory, but the subject of discretion. It 'does not go as a matter of course, but is granted or withheld according as equity and justice seem to demand in view of all the circumstances of the case.' *McCabe* v. *Matthews,* 155 U. S. 550–553, 39 L. ed. 256, 257, 15 Sup. Ct. Rep. 190; *Willard* v. *Tayloe,* 8 Wall. 557–565, 19 L. ed. 501–503." This discretion is not an arbitrary or capricious one, but is controlled by the settled principles of equity. But, as said by Mr. Justice Field in *Willard* v. *Tayloe,* supra: "No positive rule can be laid down by which the action of the court can be determined in all cases. In general, it may be said that the specific relief will be granted when it is apparent, from a view of all the circumstances of the particular case, that it will subserve the ends of justice; and that it will be withheld when, from a like view, it appears that it will produce hardship or injustice to either of the parties."

Applying these principles to the facts and circumstances of the case, we are of the opinion that there was no error in denying specific performance of the contract. Looking at what we believe to be the actual value of the land at the time of the contract,—though that of itself would be no sufficient ground for refusing performance,—and the expensive conditions of quieting the title, the contract was a hard one. The contract was recorded so as to give notice to subsequent purchasers and encumbrancers, but its enforcement was delayed for almost three years, during which time the property increased greatly in value. As said in the opinion on the former appeal (36 App. D. C. 483): "One who appeals to the discretion of a court of equity to decree specific performance must do so with reasonable promptitude." And particularly is this so where the vendor only is bound by the contract. The conditions of this case, coupled with the long and inexcused delay in asking the remedy, show a case of hardship and injustice that a court of equity cannot sanction.

Ordinarily, the dismissal of a bill for specific performance leaves the plaintiff to the assertion of his remedy at law; it is only under extraordinary circumstances that it will be retained for the award of compensation or damages, where there has been a breach. In the present case, presumably by concession of the defendant, and without exception by the plaintiff, who has assigned no error thereon, the decree required the payment by the defendant Reeves of moneys due by him to the plaintiff, as a condition of dismissing the bill. The decree as entered will be affirmed with costs. *Affirmed.*